UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| N.J., individually and on behalf of S.A., *Plaintiff*, v. JERSEY CITY BOARD OF EDUCATION, *Defendant*. | 24-cv-9190 (MEF)(JRA) **OPINION and ORDER** |

**Table of Contents**


I. Background
  A. The Allegations
  B. Procedural History
  C. The Court's Approach
II. Limitations Period
III. Merits
  A. Fifth and Sixth Grade
    1. Knowledge
    2. Failure to Act
  B. Seventh Grade
    1. Knowledge
    2. Failure to Act
IV. Conclusion


* * *

A student had some difficulties at school, and his mother came to believe that the school was discriminating against him because of his disability.

So the mother sued the school, mainly alleging violations of federal law.

The school has now moved to dismiss.

The motion is denied.

* * *

# I. Background

## A. The Allegations

Because this is a motion to dismiss, the Court must take all of the complaint's allegations as true. See McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009). Whether they are in fact true --- that is a question for later in the case.

* * *

A student[1] started out in private school. See Amended Complaint and Demand for Jury Trial ("Complaint") (ECF 26) ¶¶ 9-18.

During his first few years there, the student had some difficulties. Falling behind on his schoolwork and feeling anxious, plus trouble staying focused. See id. ¶¶ 18-28.

So the student's mother[2] did some research and decided that it would make sense to switch him to a public school. See id. ¶¶ 29-30.

The change was made at the beginning of the fifth grade, and the student was enrolled in a Jersey City public school. See id.

At the start of the school year, the school set up a special education plan for the student. See id. ¶¶ 31-33.

But the year was rocky. The student struggled with some of the same difficulties as before. See id. 35-52. Throughout fifth grade. See id ¶¶ 35-42. And into sixth grade, and seventh. See id. ¶¶ 43-117.

---

[1] The student is not identified here by name --- rather, as "S.A." S.A. is under 18. See Complaint ¶ 7. To protect his privacy, the local rules allow him to litigate under his initials. See Civ. Local Rule § 5.2(17).

[2] She is identified by her initials, too. As "N.J." This is presumably to ensure the anonymity of her son, S.A. See footnote 1.

But the school made no material changes[3] to the beginning-of-fifth-grade plan until part way through seventh grade.[4] See id. ¶¶ 79-83.

And by the end of that school year, the student switched schools again --- to a specialized private school for students with disabilities, where his mother and the Jersey City public school thought he would get more support and have a smoother experience. See id. ¶¶ 120-121.

## B. Procedural History

In light of the above, this case was filed.

The Plaintiff is the student's mother.[5] She presses some claims on her own behalf. See Complaint ¶¶ 124-138. And some on behalf of her under-18 son, the student. See id.

The Defendant is the Jersey City Board of Education.

The core of the Plaintiff's claims: that the Defendant discriminated against the student because of certain

---

[3] The Court reads the complaint in this way based on the Plaintiff alleging (i) that the original educational plan was inadequate from the start, (ii) that she complained to the school that the plan was not working, and (iii) that a material change did not come until part way through seventh grade. See Complaint ¶¶ 32, 34, 42, 53, 79-83. The parties also read the complaint in this way. See Brief of Defendant in Support of Defendant's Motion to Dismiss the Amended Complaint in Lieu of Answer (ECF 27-1) at 18; Plaintiff's Brief in Support of Her Opposition to Defendant's Motion to Dismiss Amended Complaint in Lieu of Answer ("Plaintiff's Brief") (ECF 30) at 35.

[4] The beginning-of-fifth-grade plan was a "504 plan." See Complaint ¶ 32. A 504 plan includes "services and changes to the learning environment to enable students to learn alongside their peers." Doe ex rel. Doe v. Brighton Sch. Dist. 27J, 2022 WL 4078230, at *2 n.3 (D. Colo. Sept. 6, 2022). Per the complaint, the Jersey City school did not materially change the 504 plan until the student's seventh-grade year, when it began using a more involved plan called an "individualized education program" or "IEP." See id. (explaining the difference); Complaint ¶¶ 79-83.

[5] Recall: N.J.

disabilities he has, in violation of federal law. See Complaint ¶¶ 122-37.[6]

The Defendant has now moved to dismiss the Plaintiff's various claims. See Notice of Motion to Dismiss Complaint in Lieu of Answer (ECF 27); Brief of Defendant in Support of Defendant's Motion to Dismiss the Amended Complaint in Lieu of Answer ("Defendant's Brief") (ECF 27-1).

The motion is before the Court.

### C. The Court's Approach

The Defendant advances two main arguments for dismissal.

First, that this case was filed too late. And second, that it comes up short on the merits --- because the Plaintiff did not properly allege deliberate indifference, as she needs to. See Defendant's Brief at 5-19.

The Court's conclusion: neither argument works, and the motion to dismiss must therefore be denied.

## II. Limitations Period

Start with the timing issue.

Per the Defendant, the Plaintiff got going late --- she waited too long before filing this case. See Defendant's Brief at 5-12; Brief in Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint in Lieu of Answer (ECF 31) ("Defendant's Reply Brief") at 1-6.

The limitations period for the Plaintiff's federal-law claims[7] is borrowed from the local-law limitations period for personal-injury claims. See Disabled in Action of Pa. v. Se. Pa. Transp. Auth., 539 F.3d 199, 208 (3d Cir. 2008).

Here, that means New Jersey's two-year limitations period. See N.J.S.A. 2A:14-2(a).

---

[6] There are state-law claims here, too. More on those in footnote 28. Aside from what is set out in that footnote, the Court's analysis in this Opinion and Order concerns only the federal-law claims.

[7] Those are the only ones discussed throughout this Opinion and Order, with a small exception. See footnotes 6, 28.

The Plaintiff filed this case in September of 2024. So the Defendant argues that all of her claims from two years before that, from before September 2022 --- all of those are late, and cannot be considered here. See Defendant's Brief at 5-12.

* * *

But the Plaintiff has a counterargument.

The two-year clock, she contends, never started running. It has been and continues to be stopped ("tolled"), because the student is not yet 18. See Plaintiff's Brief in Support of Her Opposition to Defendant's Motion to Dismiss Amended Complaint in Lieu of Answer ("Plaintiff's Brief") (ECF 30) at 24-30.

In this area, the tolling rules are also supplied by local law. See Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 422 (3d Cir. 2005).[8]

And under New Jersey law:

> If a person entitled to commence an action . . . is under the age of 18 years . . . , the person may commence the action . . . , within the time as limited by those statutes, after reaching majority[.]

N.J.S.A. 2A:14-21.

This is all but the end of the road for the Defendant's timeliness argument.

The "person entitled to commence an action" is, here, the student. He is 14, see Complaint ¶ 7 --- "under the age of 18 years." So he has the same two years to bring his case as everyone else --- "the time as limited by th[]e statute[] [of limitations]."[9]

But because he is now a minor, his two years starts to run from when he turns 18 ("after reaching majority").

---

[8] See also, e.g., S.B. ex rel. A.B. v. Trenton Sch. Dist., 2013 WL 6162814, at *8 (D.N.J. Nov. 25, 2013) (as to the specific tolling rule invoked by the Plaintiff).

[9] The statute of limitations is the one noted above, at N.J.S.A. 2A:14-2(a).

That moment is years away. So it cannot be argued that, now, the limitations period is somehow in the rear-view mirror, already come and gone.[10]

* * *

Against this conclusion, the Defendant suggests that New Jersey's minority-tolling rule does not apply here. See Defendant's Reply Brief at 5-6.

The argument seems to be that minority tolling applies only as to those who have filed suit after they are 18 --- and therefore the rule has no bearing in a case like this one, brought for someone (the student) who is not yet 18. See id.

But this argument runs aground on LaFage v. Jani, 166 N.J. 412 (2001). There, the New Jersey Supreme Court applied the minority-tolling rule to a wrongful death claim brought by a mother for her minor children. See id. at 426–40. And the Supreme Court also addressed the minority-tolling rule more generally. It explained (though perhaps in dicta) that the rule would "undisputably" apply to personal-injury suits brought for children who were still minors. See id. at 426.

---

[10] The picture is not changed by the fact that the student's mother has brought claims on his behalf. She had to. Because the student is a minor, his claims can only be brought through someone else. See Fed. R. Civ. P. 17(b)-(c). And that is what the student's mother has done --- she has brought claims for him. See Complaint ¶¶ 124-138; see generally Morgan v. Potter, 157 U.S. 195, 198 (1895) ("The next friend, by whom the suit is brought on behalf of the infant, is neither technically nor substantially the party, but resembles an attorney, or a guardian ad litem, by whom a suit is brought or defended [on] behalf of another."). New Jersey's minority-tolling rule is routinely applied in situations like this one. See, e.g., S.B. ex rel. A.B., 2013 WL 6162814, at *8; R.K. v. Y.A.L.E. Schools, Inc., 621 F. Supp. 2d 188, 203 n.16 (D.N.J. 2008); Woodruff ex rel. B.W. v. Hamilton Twp. Pub. Schs., 2007 WL 4556968, at *5 n.5 (D.N.J. Dec. 20, 2007); T.G. v. Kaplan, 2011 WL 1004645, at *14 (N.J. App. Div. Mar. 23, 2011). Including by the New Jersey Supreme Court. See LaFage v. Jani, 166 N.J. 412, 426–440 (2001); cf. Rex v. Hunter, 26 N.J. 489, 494 (1958).

LaFage, in short, largely rejects the interpretation of the minority-tolling rule that the Defendant puts forward.[11]

* * *

At the motion-to-dismiss stage, a limitations-period argument can succeed only if it is "apparent on the face of the complaint" that time has run out. See Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017).

That bar is not cleared here. So move now to the merits.

## III. Merits

The Plaintiff's federal claims come under the Americans with Disability Act ("ADA") and the Rehabilitation Act. See Complaint ¶¶ 122-27, 130-35.

Start off with a quick summary of the relevant law under those statutes. Then get to the analysis, school year by school year.

* * *

Each of the federal laws invoked by the Plaintiff requires her to make out the same three elements.[12] See S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 260 (3d Cir. 2013).

That the student was (1) disabled; (2) otherwise qualified to participate in the relevant school program; and (3) denied the

---

[11] The Defendant may also potentially be arguing that the minority-tolling rule only applies in cases in which the minor has a new guardian. See Defendant's Reply Brief at 5-6. Maybe the argument is that new guardians need more time to get going in a way long-time guardians do not. Time to get up to speed, and then to bring suit. But if that is what the Defendant is arguing, the argument is not meaningfully developed. It is not based on any case citations. And it does not reckon with seemingly contrary authority. See Unkert by Unkert v. Gen. Motors Corp., 694 A.2d 306, 309 (N.J. App. Div. 1997) ("[W]e are confident that the appointment of a guardian for an infant would not neutralize [N.J.S.A. 2A:14-21] and trigger the beginning of a limitation period.").

[12] "Causation standards differ between the ADA and [the Rehabilitation Act]." Durham v. Kelley, 82 F.4th 217, 226 (3d Cir. 2023). But the Defendant does not press any argument about causation. So the causation distinction does not matter here.

benefits of the program or subject to discrimination because of his disability. See id.

As the Plaintiff here is seeking compensatory damages, see Complaint ¶¶ 124, 127, 129, 132, 135, 138, there is an extra hurdle, too.

Namely, she must show that any discrimination was intentional --- that it was, for example, the result of deliberate inference. See Durham v. Kelley, 82 F.4th 217, 226 (3d Cir. 2023).[13]

That last piece is the one that matters here --- because the Defendant argues only that the Plaintiff has not adequately alleged intentional discrimination. See Defendant's Brief at 16-19.

So zero in there.

* * *

To establish intentional discrimination under a deliberate indifference standard, the Plaintiff must plausibly allege both knowledge and inaction.[14]

That the Defendant knew that the student needed certain accommodations.[15]

---

[13] Intentional discrimination can be established in any number of ways. See Durham, 82 F.4th at 226. Deliberate indifference is one. See id. at 225. It is specifically called out here because it is the only intentional discrimination theory the Plaintiff presses. See Plaintiff's Brief at 33-36.

[14] "Plausibly" because that is what is required at the motion-to-dismiss stage. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That standard is "not especially high." Makdisi v. U.S. Dep't of State, 832 F. Supp. 3d 445, 459 (D.N.J. 2026); see also Schuchardt v. President of the United States, 839 F.3d 336, 347 (3d Cir. 2016).

[15] The knowledge requirement is sometimes formulated in a more general way --- as knowledge that a "federally protected right is substantially likely to be violated." Durham, 82 F.4th at 226. This can make the analysis abstract in certain cases. So the Court uses the closer-to-the-ground formulation laid out in the text. That approach is consistent with Third Circuit precedent. See Durham, 82 F.4th at 226; Ridley Sch., 680 F.3d at 280; see also Paradise Valley Unified Sch. Dist., 815 F.3d at 1207. And on the allegations here, it gets at the same issues as the "federally protected right" formulation.

And that the Defendant failed to act despite that knowledge. See Durham, 82 F.4th at 226; Ridley Sch. Dist. v. M.R., 680 F.3d 260, 280 (3d Cir. 2012); A.G. v. Paradise Valley Unified Sch. Dist. No. 69, 815 F.3d 1195, 1207 (9th Cir. 2016). The failure to act "must be a deliberate choice, rather than negligence or bureaucratic inaction." Durrell, 729 F.3d at 263 (cleaned up).

* * *

Has the Plaintiff plausibly alleged knowledge and inaction? Yes, the Court concludes.

To see why, work through the Plaintiff's allegations in pieces. As to fifth and sixth grade in Part II.A. Seventh grade in Part II.B.

### A. Fifth and Sixth Grade

Start off with the fifth-and-sixth-grade allegations.

During the fall of 2021, the student began fifth grade. See Complaint ¶ 30. And in September of that year, as the school year was getting underway, school officials (i) determined that the student had certain disabilities, and (ii) created a plan for him. See id. ¶¶ 31–32.

Fast forward a year, to September 2022 --- when the student was taken from school to the hospital in an ambulance, having become "dysregulated." See id. ¶ 44.

In the year between those two bookends, some of what allegedly happened:

- The student "spent significant amounts of time out of the classroom . . . with the school's crisis intervention specialist or school nurse." Id. ¶ 35.
- He fell behind, and was failing in some classes. See id. ¶ 41.
- "Teachers reported strange behaviors." Id. ¶ 39.
- The student's mother, the Plaintiff, expressed concerns to school personnel as to "whether the plan was working." Id. ¶ 42.

But per the complaint, the school stuck to the plan it had formulated when the student first started at the school. See id. ¶¶ 32, 42, 52. The September 2021 plan was not meaningfully modified (if modified at all), see id., even as the alleged events set out above unfolded. See id. ¶¶ 29–53.

Giving the Plaintiff the benefit of every reasonable inference,[16] it is plausible, as set out below, that the Defendant (i) had knowledge that its fall 2021 plan was not getting the job done, and (ii) did not act as it needed to in order to fix things.

### 1. Knowledge

Knowledge in this context can be inferred from blinking warning lights --- signals that a student with a disability is having serious struggles, of a kind that together suggest that he is not getting an accommodation he needs.

A student's behavior in school can be a relevant data point. See, e.g., Paradise Valley Unified Sch. Dist., 815 F.3d at 1208; Beam v. W. Wayne Sch. Dist., 165 F. Supp. 3d 200, 211 (M.D. Pa. 2016); D.C. v. Pittsburgh Pub. Schs., 415 F. Supp. 3d 636, 658 (W.D. Pa. 2019); D.C. ex rel. A.T. v. Pittsburgh Pub. Schs., 2022 WL 267359, at *12 (W.D. Pa. Jan. 28, 2022); cf. Durham, 82 F.4th at 226; McDaniel v. Syed, 115 F.4th 805, 829 (7th Cir. 2024); E.W. v. Mt. Vernon Cmty. Sch. Corp., -- F.4th ---, 2026 WL 2639512, at *6 (7th Cir. Sept. 8, 2026).

And here, there are allegations along those lines, from the period after the 2021 plan was fixed in place. See, e.g., Complaint ¶¶ 35–37, 40–41 (describing various behavioral and educational difficulties).

Knowledge can also be inferred from the need for in-school crisis intervention. See, e.g., D.C. v. Pittsburgh Pub. Schs., 415 F. Supp. 3d at 658; cf. Beam, 165 F. Supp. 3d at 211; Skroupa v. Shaler Area Sch. Dist., 2024 WL 3292903, at *9 (W.D. Pa. July 3, 2024).

There was that here, too. See Complaint at ¶¶ 35, 37 (describing multiple interactions with the in-school crisis intervention specialist).

Complaints from parents can also give a school the necessary heads-up. See, e.g., Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 537 F. App'x 90, 96 (3d Cir. 2013); Paradise Valley Unified Sch. Dist., 815 F.3d at 1208; D.F. v. N.Y.C. Dep't of Educ., 2025 WL 1425752, at *11 (S.D.N.Y. May 16, 2025); D.C. ex rel. A.T. v. Pittsburgh Pub. Schs., 2022 WL 267359, at *1-9, 12;

[16] As is required at this stage. See Connelly v. Lane Constr. Corp., 809 F.3d 780, 790 (3d Cir. 2016).

L.T. ex rel. B.T. v. Mansfield Twp. Sch. Dist., 2009 WL 737108, at *6 (D.N.J. Mar. 17, 2009); cf. T.F. v. Fox Chapel Area Sch. Dist., 589 F. App'x 594, 601 (3d Cir. 2014) (finding no deliberate indifference in part because school "address[ed] the concerns of [student's] parents"); Mt. Vernon Cmty. Sch. Corp., -- F.4th ---, 2026 WL 2639512, at *6 (similar).

And so can reports from teachers. See, e.g., Paradise Valley Unified Sch. Dist., 815 F.3d at 1208; Compton Unified Sch. Dist. v. Addison, 598 F.3d 1181, 1183, 1184 n.2 (9th Cir. 2010); Skroupa, 2024 WL 3292903, at *9; D.C. ex rel. A.T. v. Pittsburgh Pub. Schs., 2022 WL 267359, at *1-9, 12; A.B. ex rel. B.S. v. Adams-Arapahoe 28J Sch. Dist., 831 F. Supp. 2d 1226, 1238, 1255 (D. Colo. 2011); cf. D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 270 (3d Cir. 2014) (describing reports from teachers as the plaintiff's "strongest" sign of deliberate indifference).

Here, there were both --- some reports from teachers, see Complaint ¶¶ 39-40, plus complaints to the school from the student's mother. See id. ¶ 42.

Stack all of this up, and the allegations do what they need to --- they establish a plausible likelihood that school officials knew that the student needed accommodations that he was not getting under the 2021 educational plan. There were simmering background difficulties as to behavior and academic performance, see Complaint ¶¶ 35-37, 40-42, and also pointed moments of more intense concern --- at-school crisis interventions, of a kind that would have been hard to miss. See id. ¶¶ 35, 37. Plus attention-grabbing information from a mix of sources --- teachers, see id. ¶¶ 39-40, and the student's mother. See id. ¶ 42.

### 2. Failure to Act

Move now from the first prong of deliberate indifference (knowledge) to the second (inaction).

As to this, the Defendant points to the fall 2021 plan it set up --- and argues that this shows it did not sit by. See Defendant's Brief at 18-19 (citing Complaint ¶¶ 31-34).

But this argument is too categorical. Its premise seems to be that when a plan has been put in place, that is enough. That there is no duty to take the plan down off the shelf and revisit

things --- even where, as alleged here, the ground has shifted since the plan was first worked out.

But that is not the law.

The deliberate indifference box can be checked where, as here, there are plausible allegations that a school kept in place the same general plan for a substantial period of time,[17] even as it knew that it was no longer working. See, e.g., Paradise Valley Unified Sch. Dist., 815 F.3d at 1208; M.P. ex rel. K. v. Indep. Sch. Dist. No. 721, 326 F.3d 975, 982 (8th Cir. 2003); Vance v. Spencer Cnty. Pub. Sch. Dist., 231 F.3d 253, 261-62 (6th Cir. 2000); D.C. ex rel. A.T. v. Pittsburgh Pub. Schs., 2022 WL 267359, at *1-9, 12; Beam, 165 F. Supp. 3d at 211-12; Wisniewski v. Sunset Elementary Sch., 2025 WL 606523, at *7 (S.D. Fla. Feb. 4, 2025), report and recommendation adopted, 2025 WL 603049; cf. Lab'y Charter Sch. v. M.R.S. ex rel. Smith, 2024 WL 3518306, at *2 (3d Cir. July 24, 2024); Haberle v. Borough of Nazareth, 936 F.3d 138, 141-42 (3d Cir. 2019); Button v. Bd. of Regents of Univ. & Cmty. Coll. Sys. of Nevada, 289 F. App'x 964, 968 (9th Cir. 2008).[18]

* * *

Bottom line: as to fifth and sixth grade, the knowledge box is plausibly checked,[19] and the Defendant's broad argument as to inaction is at odds with the caselaw.[20]

---

[17] The plan was put in place in September 2021 and was allegedly first modified in November 2023. See Complaint ¶¶ 32, 83.

[18] Compare K.K. ex rel. L.K. v. Pittsburgh Pub. Schs., 590 F. App'x 148, 150-53 (3d Cir. 2014) (holding that a school did not act with deliberate indifference when it "revised" a student's educational plan and made "significant modifications" in response to, among other things, the changing needs of the student), and Mt. Vernon Cmty. Sch. Corp., 2026 WL 2639512, at *6 (no deliberate indifference where a school "amended" the original plan to address a student's deteriorating mental health), with Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001) ("[A] public entity does not 'act' by proffering just any accommodation."), as amended on denial of reh'g (Oct. 11, 2001).

[19] See Part III.A.1.

[20] See Part III.A.2.

### B. Seventh Grade

Turn now to the student's seventh-grade year, starting with the relevant allegations.

Leading up to seventh grade, the student was privately evaluated by a doctor. See Complaint ¶ 67-70. The doctor recommended that the student receive a better plan and attend a "small school" with "intensive special education and therapeutic support." Id. ¶ 72. Those recommendations were then shared with the Jersey City school. See id. ¶ 76.

The school allegedly responded to those recommendations in stages.

First, in December 2023, the Jersey City school agreed to transfer the student to a different school. See id. ¶¶ 91, 97-98.

While working on the transfer, the school amended the plan to provide "15 hours of home instruction per week." Id. ¶ 100.

A bit more than five weeks passed before the home instruction began in January 2024. See id. ¶¶ 100, 103, 105, 109. And once it got going, the home instruction lasted five hours per week, rather than the fifteen envisioned by the amended plan. See id. ¶ 109.

And then another four months passed before the student was transferred to a different school in April 2024. See id. ¶¶ 97, 121.

* * *

Do these allegations plausibly add up to deliberate indifference? The parties disagree. Compare Plaintiff's Brief at 34-35 (yes), with Defendant's Brief at 19 (no).

The Court's conclusion: the Plaintiff has it right.

The analysis goes down the same path as before. Knowledge first, then failure to act.

#### 1. Knowledge

As explained above, the school here had allegedly received plausible-enough indications that its existing approach was falling short --- that the student needed more accommodations

than what he was getting. See Part II.A. (discussing fifth and sixth grade).

Then, in the seventh grade, added information came in --- the doctor's report, which was allegedly shared with the school and concluded that the student needed a better educational plan. See Complaint ¶¶ 67-75; cf. Fox Chapel Area Sch. Dist., 589 F. App'x at 601 (holding that there was no deliberate indifference where a school worked with a student's doctor to develop and implement an educational plan).

The earlier warning signs, and the doctor's report --- these pointed roughly in the same direction. From their combined effect, it is plausible that the school knew that the student needed more accommodations in seventh grade.

### 2. Failure to Act

A failure to act can sometimes be inferred from a failure to implement a plan as written. See, e.g., R.D. ex rel. Davis v. Lake Washington Sch. Dist., 843 F. App'x 80, 83-84 (9th Cir. 2021); D.F., 2025 WL 1425752, at *11; Beam, 165 F. Supp. 3d at 211; Patricia N. v. Lemahieu, 141 F. Supp. 2d 1243, 1255 (D. Haw. 2001).

And, here, the Plaintiff alleges that shortfall. See Complaint ¶¶ 83, 100, 109 (alleging that the student's plan was not fully implemented, because he received only five, rather than fifteen, hours of home instruction per week); see also id. ¶ 34.

Also supporting a failure-to-act determination --- when officials wait longer than they should before taking action. See, e.g., Adom v. Cal. Dep't of Corr. & Rehab., --- F.4th ----, 2026 WL 2639549, at *12 (9th Cir. Sept. 8, 2026) (five-week interval); Furgess v. Pa. Dep't of Corr., 933 F.3d 285 (3d Cir. 2019) (three-month interval); Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1140 (9th Cir. 2001) (six-week interval); Dorsey on behalf of J.D. v. Pueblo Sch. Dist. 60, 215 F. Supp. 3d 1082, 1089 (D. Colo. 2016) (six-month interval).

Here, the Plaintiff alleges delays spanning around five months (December 2023 to April 2024). See Complaint ¶¶ 100-09; id. ¶¶ 97, 121.[21]

---

[21] Multiple, overlapping periods of delay can also tilt the scale toward a failure-to-act conclusion. See Chambers, 537 F.

It is plausible that this was too long.

Time for school officials to absorb new information, plus time to think things through, to assess alternatives, and to consult closely with parents --- all of that needs to get built into any sense of what a realistic pace looks like in this context.

But it is plausible that, here, five months was markedly more time than was needed to accomplish each of the listed-out tasks. And all the more so because it is alleged that the school only started to act on one of the doctor's suggestions[22] two days after the student sought emergent relief from state education officials.[23] See Complaint ¶¶ 72, 80, 117-18. See Chambers, 537 F. App'x at 92-93, 96 (suggesting that deliberate indifference could be found based, in part, on the school district being ordered by the state to act); D.F. v. New York City Dep't of Educ., 2025 WL 1425752, at *11 (similar); Patricia N., 141 F. Supp. 2d at 1255 (similar).

Putting it all together, (i) not following the then-current plan, (ii) delay, and (iii) waiting until the Plaintiff got the state involved --- all of that adds up to a plausible failure to act during seventh grade.

* * *

Deliberate indifference cases are often unable to get resolved at the motion-to-dismiss stage.[24]

---

App'x at 96; Duvall, 260 F.3d at 1140; E.E.O.C. v. AutoZone, Inc., 707 F.3d 824, 837 (7th Cir. 2013); Patricia N., 141 F. Supp. 2d at 1255. There are allegations along those lines here, too --- of overlapping delays. See Complaint ¶¶ 100-09 (first interval in getting home instruction going); id. ¶¶ 97, 121 (second interval in having the student transferred).

22 For the student to attend a school with more "intensive special education and therapeutic support." See Complaint ¶ 72.

23 Recall too that the school, at this point, had already agreed to transfer the student to a different school. See Complaint ¶ 97.

24 See Doe v. Ohio Univ., 2022 WL 899687, at *6 (S.D. Ohio Mar. 28, 2022); see also, Durham, 82 F.4th at 226 (holding that there were plausible allegations of deliberate indifference and

Some of the frequently-recurring questions in this area[25] can be difficult to definitively decide without depositions.

And others are tough to work through without the plaintiff getting some information through discovery as to the school's internal decision-making process. Without a sense of what school officials were doing behind the scenes, it can be hard to draw the line between "a deliberate choice" on the one hand, and "negligence or bureaucratic inaction" on the other. See Durrell, 729 F.3d at 263 (quotations omitted).

This case is no exception to any of this.

Giving the Plaintiff the benefit of the inferences to which she is entitled at this early stage, there are plausible allegations here as to both knowledge and inaction concerning the fifth-and-sixth-grade period and also the seventh-grade period.

* * *

A last wrinkle.

In its reply brief,[26] the Defendant advances an added reason why the Plaintiff's federal claims should be dismissed --- it is said that she did not exhaust certain remedies that she needed to. See Defendant's Reply Brief at 6-7.

---

therefore vacating grant of motion to dismiss); Furgess, 933 F.3d at 292 (same).

[25] Did a student's difficulties suggest that the plan was not working and could not work? Or only that he was having ups-and-downs --- of a sort that could be worked through by persistently and faithfully applying the plan?

[26] Normally, the Court would not consider an underdeveloped argument made for the first time in a reply brief. See, e.g., Specht v. Suarez, 798 F. Supp. 3d 485, 501 n.18 (D.N.J. 2025); Days Inn Worldwide, Inc. v. Shri Ganesai LLC, 791 F. Supp. 3d 540, 552 n.20 (D.N.J. 2025). But the Plaintiff here filed a sur-reply addressing the late-breaking argument. See Plaintiff's Surreply in Response to Defendant's Reply ("Sur-Reply") (ECF 35). Given that, the Court will take up the relevant issue after some more briefing. See Cornerstone Residence, Inc. v. City of Clairton, 2018 WL 306670, at *4 (W.D. Pa. Jan. 5, 2018) ("a party is not prejudiced by new arguments set forth in a Reply if it is provided the opportunity to file a Sur-Reply to address any such issues.").

But the Third Circuit does not appear to have weighed in on this issue, and more briefing will be required before the Court takes it on.[27] An order as to this will issue later today.

## IV. Conclusion

For the reasons set out above, the Defendant's motion at ECF 27 is denied.[28]

---

[27] As the parties recognize, a 2023 Supreme Court decision supplies the relevant general framework. See Luna Perez v. Sturgis Pub. Schs., 598 U.S. 142 (2023). But the Defendant cites no cases postdating that decision. And the Plaintiff alludes to only one, which concerns hospitalization costs. See Sur-Reply at 7 (relying on Smith v. Kalamazoo Pub. Sch., 703 F. Supp. 3d 822 (W.D. Mich. 2023)).

[28] Before wrapping up, two things. First, recall that the Plaintiff brought claims for the student and also for herself. See Complaint ¶¶ 124-138. Later, in her legal briefing, the Plaintiff withdrew some of her claims and clarified that she had never brought others. She withdrew any claim for emotional-distress damages. See Plaintiff's Brief at 37. And she clarified that she was not bringing any associational discrimination claims. See id. But the Plaintiff still appears to be seeking tuition reimbursement --- though it is unclear if that is on behalf of herself or her son, the student. (Depending on who is bringing that claim, there may be questions about whether the minority-tolling rule would apply. Cf. Emery v. Roanoke City Sch. Bd., 432 F.3d 294, 299 (4th Cir. 2005); B.F. v. Div. of Youth & Fam. Servs., 686 A.2d 1249, 1258 (N.J. App. Div. 1997). Further clarity is required as to tuition reimbursement and whether it remains a part of this case. As to this, too, another order will issue later today.) Second, the Defendant seeks dismissal of the state-law claims on three grounds. But none work. It argues that the limitations period has run on those claims. See Defendant's Brief at 6-12. But the limitations period is tolled on the student's state-law claims, just as on his federal ones. See Montells v. Haynes, 133 N.J. 282, 285 (1993); N.J.S.A. 2A:14-21. Next, the Defendant argues that the state-law claims should be dismissed because the Plaintiff did not plausibly allege an associational discrimination claim. See Defendant's Brief at 22, 25. But as noted in this footnote, the Plaintiff clarified that she is not bringing an associational discrimination claim. See Plaintiff's

IT IS on this 13th day of October, 2026, **SO ORDERED.**

Michael E. Farbiarz, U.S.D.J.

---

Brief at 37. Finally, the Defendant contends that if the federal claims are dismissed, the state claims should then be dismissed for lack of supplemental jurisdiction. See Defendant's Brief at 20. But the Court has not dismissed the federal claims, so supplemental jurisdiction is intact.